1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **WESTERN DIVISION**

11  **JAMES VICTOR OWENS,**                    )
                                                )
12                      **Plaintiff,**          )      **Case  No. CV 13-7794 AJW**
                                                )
13             **v.**                           )      **MEMORANDUM OF DECISION**
                                                )
14  **CAROLYN W. COLVIN,**                      )
    **Acting Commissioner of the Social**       )
15  **Security Administration,**                )
                                                )
16                      **Defendant.**          )
                                                )
17  _____        )

18          Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the

19  Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental

20  security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their

21  contentions with respect to the disputed issue.

22                              **Administrative Proceedings**

23          The procedural facts, which are undisputed, are summarized in the joint stipulation.  [See JS 2-3].

24  In a written hearing decision that constitutes the Commissioner's final decision in this matter, an

25  administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of heart disease,

26  hypertension, diabetes mellitus, and foot drop, but that he retained the residual functional capacity ("RFC")

27  to perform light work.  [AR 26-30].  The ALJ found that plaintiff could perform his past relevant work as

28  a data entry clerk, which is a sedentary position.  [AR 30-31].  Therefore, the ALJ found plaintiff not

1    disabled at any time through the date of her decision.  [AR 31].

2                                **Standard of Review**

3           The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

4    evidence or is based on legal error.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

5    2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

6    a mere scintilla, but less than a preponderance."  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

7    2005).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

8    Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted).  The court is

9    required to review the record as a whole and to consider evidence detracting from the decision as well as

10   evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

11   Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than

12   one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13   Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

14                                  **Discussion**

15        **Credibility finding**

16          Plaintiff's sole contention is that the ALJ did not provide specific and legitimate reasons for rejecting

17   the alleged severity of plaintiff's subjective complaints.  [JS 4-6, 10-12].

18          Plaintiff was represented by counsel during the administrative hearing in August 2012 and testified

19   on his own behalf.  [AR 43-61].  Plaintiff testified that on a normal day, he showered, used his computer

20   or read, made lunch, and then sometimes used the computer again or rested.  [AR 69].  He said that

21   sometimes he fell asleep while at the computer, even if he had a full night's sleep, and that he napped "most

22   days" because he often felt "very tired" and "couldn't keep [his] head up." [AR 69].  Plaintiff said that he

23   attended church "several times a week." [AR 76-77].  He also socialized with his brother over the phone.

24   [AR 76-77].  He rented a room from a lady who attends his church and sometimes watched old movies with

25   her.  [AR 70, 77].

26          Plaintiff was hospitalized in July 2011 for congestive heart failure. [AR 63, 68].  He said that he was

27   started on medications in the hospital that improved his blood pressure, but that his symptoms of fatigue and

28   shortness of breath had not changed too much since then. [AR 68].  Plaintiff said that he could get short of

                                        2

breath walking to the car with groceries, climbing stairs, or carrying something. [AR 68-69]. Plaintiff took several medications, including furosemide (the generic form of Lasix), glipizide for diabetes, lisinopril and metoprolol for hypertension, and baby aspirin. [AR 70-71].

Plaintiff testified that he has "foot drop" that affects both feet, but primarily the left foot. [AR 72]. His feet feel numb, and his toes feel "all tangled up." [AR 71]. When he first started having foot drop symptoms, he could not lift his foot off the ground from the ankle and experienced pain running down his leg. [AR 72]. He said the numbness had improved a lot but was still present. [AR 71]. His doctors have not been able to determine the cause of his foot symptoms. [AR 72]. Plaintiff said that he can stand at church for about 10 minutes before having to sit down, and that he can sit for about an hour. [AR 71]. He can walk in a "semi-normal" fashion. [AR 73]. He can also drive. [AR 77].

Plaintiff had past work in a variety of data entry positions. [AR 71, 73]. Asked why he could no longer do that type of work, plaintiff said that he felt he could not "work a full day without having to lay down and that's basically the main reason," along with his foot drop symptoms. [AR 71]. Plaintiff also testified that he had been selling items on eBay since before 2005. He sold mainly vintage postcards, but in early 2011 he also started selling guitars. [AR 71, 73-76]. Plaintiff said that "a lot of the symptoms were happening" at that point. [AR 76]. For example, plaintiff got short of breath carrying guitars to the post office and either have to stop or have a friend carry them for him. [AR 76].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367

F.3d at 885; see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

    The ALJ concluded that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's finding that plaintiff retained the RFC for light work.  [AR 28].  The ALJ noted that plaintiff indicated on an exertional questionnaire that his shortness of breath occurred when walking or carrying packages; he had fatigue and needed bed rest; he had to rest after walking; and he could not carry more than 10 pounds.  [AR 28, 199-201].  Despite those assertions, plaintiff acknowledged he was able to shop for groceries, put clothes away, keep his bed tidy, do laundry in small amounts, drive a car, and complete small tasks with rest.  [AR 28, 199-200].  The ALJ also cited plaintiff's testimony that he watches old movies with his landlady.  [AR 28, 77].  Standing alone, plaintiff's ability to perform this range of daily activities may not be sufficient to discredit his subjective complaints.  See Vertigan v. Halter, 260 F.3d 1044, 1049-1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled.").

    Contrary to plaintiff's argument, however, the ALJ did not rely solely on these daily activities to discredit plaintiff's subjective symptom testimony. The ALJ also relied on plaintiff's testimony regarding the activities plaintiff performed in connection with his eBay business. [AR 28].  Plaintiff's testimony about his self-employment activities supports the ALJ's credibility finding for two related but distinct reasons. First, plaintiff's testimony about his self-employment activities is inconsistent with his testimony that his subjective fatigue, shortness of breath, and foot problems were so severe that they precluded from performing any job.  Second, plaintiff's testimony indicates that he can perform a variety of activities that are directly transferable to a work setting.  See Molina v. Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (stating that the ALJ may use "ordinary techniques of credibility evaluation" and may consider "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct," "whether the claimant engages in daily activities inconsistent with the alleged symptoms," and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting," and remarking that "[e]ven where those activities suggest some difficulty functioning, they may

4

be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (internal quotation marks and citations omitted).

For example, when asked about his work history, plaintiff testified that he had been selling items on eBay "mainly full time after 2005."[1] [AR 73]. Plaintiff said that he mostly sold vintage postcards. [AR 73]. Plaintiff, who lived in the San Diego area, said that he traveled to postcard shows in other cities to purchase the postcards he later sold on eBay, and that there generally were "at least one or two" such shows a month. [AR 73, 156-157, 190]. Plaintiff traveled mostly to shows in the Los Angeles area, but he also traveled to shows in places such as Sacramento, California, and Memphis, Tennessee.  [AR 73, 156-157, 190].  After buying postcards at these shows, he transported them home and marketed them on eBay by posting an image of the card, the price, and a description for each card. [AR 75].  Sometimes he compiled groups of postcards and marketed them as a package deal. [AR 74].  He also created his own shipping and return policies.  [AR 75].  Plaintiff lifted and carried boxes and envelopes to his car and then to the post office to be shipped to customers.  [AR 181].  He said he was able to develop a good reputation in the postcard market and created a "niche" selling postcards featuring 1950's-era scenes.  [AR 74].  He developed a regular customer base that reached as far as Europe.  [AR 74].  In 2011, plaintiff also began selling guitars, mostly on eBay, after he worked out an arrangement with the owners of a guitar collection who were clients of a financial planner who was a friend of plaintiff's from church.[AR 76].  Plaintiff's ability to engage in those activities on what he described as a "mainly full time" basis for several years, including after his alleged date of onset of disability, is inconsistent with his subjective allegations of being totally disabled and unable to work.  See Molina, 674 F.3d at 1112-1113; see also Jones v. Comm'r, Soc. Sec., 2014 WL 2957454, at *5 (E.D. Cal. June 20, 2014) (holding that the ALJ properly relied on the claimant's ability to drive independently, use the computer to buy and sell things on eBay, and watch television most of the day in assessing credibility).

---

[1]  Plaintiff alleged that his disability began on February 1, 2011. [AR 24, 187]. In his August 2011 disability report [AR 187-197], however, plaintiff reported that he was self-employed in "Internet sales of collectibles" from "October 2003" to "present." [AR 192].   During the administrative hearing in August 2012, plaintiff testified that he had not been able to sell postcards "for awhile" because he had not "been able to go to the postcard shows" [AR 75], but he did not specify exactly how long it had been since he last attended a postcard show or sold postcards.

The ALJ also reasonably inferred that "[s]ome of the physical and mental abilities and social interactions required in order to perform [plaintiff's] activities are the same as those necessary for obtaining and maintaining employment." [AR 28]. The ALJ's conclusion in this respect was borne out by plaintiff's testimony, which establishes that he worked for several years developing and operating an eBay business that entailed traveling regularly, acquiring inventory through purchases or a consignment-type arrangement, developing a "niche" in the postcard market, marketing and selling merchandise on eBay, shipping the merchandise, and handling returns. [AR 73, 180-181]. Plaintiff's testimony also indicates that his business was profitable. Plaintiff bought his postcards for under $5, sometimes for as low as 25 cents or a dollar. [AR 74]. He sold one postcard for $255, and sometimes sold postcards for $20 or $30, but the average selling price was between $5 and $10. [AR 74]. Plaintiff testified that he made an average of $1,200 to $1,500 per month through the first couple months of 2011, when he started selling guitars. [AR 74, 76]. He received 20 percent of the proceeds from the guitar sales. [AR 76].        Plaintiff testified that he knew enough about selling items on eBay "to teach other people how to do it," and that he was trying to teach his brother the business. [AR 74]. Although plaintiff said that he had needed help carrying guitars he sold into the post office because doing so would leave him "totally out of breath" [JS at 11], plaintiff nonetheless was able to operate his business successfully and complete a wide range of other work tasks without assistance. The ALJ permissibly concluded that plaintiff's self-employment activities and work history undermined the credibility of his subjective complaints of disabling symptoms. See Molina, 674 F.3d at 1112-1113; see also Vertigan, 260 F.3d at 1049 ("[T]his court has held that if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'") (emphasis omitted) (quoting Morgan, 169 F.3d at 600); 20 C.F.R. § 416.929(a), (c)(3) (stating that the Commissioner will consider a claimant's efforts to work and prior work record in evaluating symptoms); Social Security Ruling 96-7p, 1996 WL 374186, at *5 (stating that an adjudicator may consider "[s]tatements and reports from the individual" about the individual's "prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work").

Plaintiff fails to discuss, or even acknowledge, that the ALJ also relied on the objective medical

evidence and the medical opinion evidence in assessing the credibility of his subjective complaints. [See JS 5-66; AR 28-30]. Therefore, plaintiff has waived any challenge to these remaining aspects of the ALJ's credibility finding. See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (holding that claimant waived issues because he did not raise those issues before the district court); Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005) ("A reviewing federal court will only address the issues raised by the claimant in his appeal from the ALJ's decision.").

Accordingly, the ALJ articulated specific, clear, and convincing reasons supporting her adverse credibility finding.

**Conclusion**

For the reasons stated above, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

November 4, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge